### BIG VEIN POCAHONTAS CO. v. REPASS.

(Circuit Court of Appeals, Fourth Circuit. December 13, 1916.)

No. 1469.

1. WITNESSES ⬤�longrightarrow321—CROSS-EXAMINING OWN WITNESS—DISCRETION.
　　How far a party may be allowed to, in effect, cross-examine his own witness, is usually a matter in the sound judicial discretion of the trial judge.
　　[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1094, 1099, 1100; Dec. Dig. ⬤�longrightarrow321.]

⬤�longrightarrowFor other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. MASTER AND SERVANT ⬥═══286(19)—SAFE PLACE TO WORK—QUESTION FOR JURY.

Under the evidence in an action for death of a member of the slate gang in a coal mine, killed by the fall of a stone from the roof, *held*, that the question whether the master had performed its duty of seeing that he was given a safe place in which to work was for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1026; Dec. Dig. ⬥═══286(19).]

3. MASTER AND SERVANT ⬥═══190(1)—SAFE PLACE TO WORK—NONDELEGABLE DUTY.

The master's duty of providing a safe place for work is one that cannot be delegated, so that any negligence in that respect of a boss, to whom the master leaves the determination of the question of safe place, is the master's negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 449, 450, 453, 468; Dec. Dig. ⬥═══190(1).]

In Error to the District Court of the United States for the Western District of Virginia, at Roanoke; Henry Clay McDowell, Judge.

Action by Sallis C. Repass, administratrix of Charles Repass, deceased, against the Big Vein Pocahontas Company. Judgment for plaintiff, and defendant brings error. Affirmed.

D. Lawrence Groner, of Norfolk, Va., for plaintiff in error.

William H. Werth, of Tazewell, Va., and William G. Werth, of Norton, Va., for defendant in error.

Before PRITCHARD and KNAPP, Circuit Judges, and ROSE, District Judge.

ROSE, District Judge. The parties will be described as they were below: that is, the plaintiff in error will be called the defendant, and the defendant in error the plaintiff. The latter sought to recover for the death of her son. He was a boy of 17, but appeared to those who worked with him to be a year or two younger.

At the time of his death, and for not exceeding 10 days before, he had been employed in defendant's coal mine. He was a member of what is called the "slate gang." He worked under the immediate direction of a man who was called the "slate boss," and whose duties, according to the evidence, included the inspection of the mine. Defendant's employés had been engaged in getting out the coal contained in the pillars which had originally been left to support the weight of the earth and rocks above them. As a consequence, in the part of the mine in which the pillars had been so robbed, to use the mining term, there had been some settling; that is, in miners' vernacular, a "squeeze" had taken place. For some while before the day of the accident this squeeze had apparently stopped of its own accord. In order to get at a pillar or stump in this part of the mine, so as to take out the coal contained in it, the slate gang, on the day preceding the death of plaintiff's intestate, had been set to work to clear out the loose débris which in earlier operations had been thrown in front of the pillar.

On the morning of the accident the deceased was working some-where else in the mine. While he was thus away from the spot at which he subsequently met his death, and at about 10 in the morning, a crack was discovered in the roof under which the slate gang was engaged in removing the débris before mentioned. There followed some discussion between the boss of the gang and the members as to whether this discovery spelled danger. The roof in the vicinity was sounded. Near the edges of the crack it was found to be what the witnesses called "drummy." A pick was inserted, and an attempt made to pull down anything which might be loose; but, beyond bringing away a small piece of the roof, nothing followed. When a portion of the roof is found to be in a dangerous condition, or in a condition which may prove dangerous, prudent people do one of two things. They either prop up the portion of the roof which gives indications that it may fall, so that it cannot, or they cause it to fall at a time and under circumstances in which its descent is not likely to do harm. If the latter course is adopted, the apparently loose portion may be brought down, either by wedging or by blasting. In this case the roof was not propped, nor was it pulled down. Apparently the soundings and the attempts with the pick had satisfied the gang and its foreman that the roof was not likely to fall, at least during the comparatively short time they expected to be working under it.

In the afternoon of the day upon which the crack was discovered, the slate boss summoned the deceased from wherever else in the mine he had been engaged, and put him to work at the place in which some three or four hours later he met his death. It does not appear that his attention was called to the crack, or that he ever knew of its existence. About 5:25 that afternoon a large piece of rock fell upon and killed him. It came from the place at which the crack had been seen. These facts the plaintiff, apparently with some difficulty, extracted from two of the five men who made up the slate gang with whom, at the time of his death, deceased was working.

[1] Several of defendant's assignments of error are based upon its exceptions to the action of the court in permitting the plaintiff in effect to cross-examine her own witnesses. How far a party may be allowed to go in this direction is usually a matter within the sound judicial discretion of the trial judge. We see no reason to think that it was in this case improvidently exercised.

[2, 3] At the close of plaintiff's case, defendant asked for an instructed verdict. Upon the denial of this request, it elected to stand upon the record as it then was, and did not offer any testimony. It says that there was no evidence of negligence upon the part of anybody, or, if any one was negligent, it was the slate boss, and he was a fellow servant of the deceased. The defendant was bound to see that the deceased was given a safe place in which to work. Upon the evidence, it was for the jury to say whether it had done so. So far as the record discloses, the defendant left it to the slate boss to determine whether the place at which the deceased was set to work was safe. As the duty of providing such a place is one which cannot be delegated, the learned judge below was right in instructing

the jury that any negligence of the slate boss in this respect was the negligence of the defendant.

It is earnestly argued that by the Virginia statute the duty of seeing that·the mine is safe is imposed upon the "mine foreman," or "boss," or his assistants, and that there is not sufficient evidence that the foreman of the slate gang was any one of these. Conceding, but by no means deciding, that the jury might not have been entitled to find that he was, the defendant is in no better case. There is no evidence whatever that, before putting this boy of 17 to work in that portion of the mine in which it was known a squeeze had taken place, *the mine foreman, or any one other than the slate boss and some members of his gang, had ever inspected the roof, to see what the condition was. If, as the defendant apparently contends, such inspection could·properly be made by no other than the mine foreman or his assistant, and the slate boss was neither, the jury would have been justified in finding that the plaintiff's intestate came. to his death because of the failure of the defendant to have the proper inspection made. The mining law of Virginia differs from that of West Virginia and Pennsylvania in a vitally important respect. It expressly declares that nothing in it shall be "so construed as to relieve mine owners or operators from seeing that all of" its "provisions are strictly complied with, nor from the duty imposed at common law to secure the reasonable safety of their employés, and in the performance of those duties that are nonassignable at common law, as well as those duties required by" the act, "the mine foreman, boss or fire boss, and their assistants, shall be considered as acting for the mine owner or operator as a vice principal."

We find no error in the instructions actually granted by the court. They fairly and fully stated the law. A number of .those asked for by defendant were inconsistent with the law applicable to the facts, and were properly refused. Such of them as were unobjectionable were sufficiently covered by the instructions actually given.

Finding no error, it follows that the judgment below must be affirmed. .

